Filed 11/13/25  Mercury Bowl v. Thee Aguila, Inc. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MERCURY BOWL, LLC, et al., | B342831 |
| Cross-complainants and Respondents, | (Los Angeles County Super. Ct. Nos. 19NWCV00417, 21NWCV00836) |
| v. | |
| THEE AGUILA, INC., et al., | |
| Cross-defendants and Appellants. | |

APPEAL from order of the Superior Court of the County of Los Angeles, Lee W. Tsao, Judge.  Affirmed.

The Tym Firm and Ronald D. Tym for Cross-defendants and Appellants.

Hennelly & Grossfeld, Paul T. Martin and Thomas H. Case for Cross-complainants and Respondents.

Following a 2017 trustee's sale, appellant and cross-defendant Thee Aguila, Inc. (TAI) lost its title to commercial property in Pico Rivera (the Property).  The foreclosing lender sold the Property to respondents and cross-complainants Mercury Bowl, LLC (Mercury Bowl) and Green Rivera, LLC (Green Rivera) (respondents) in 2019.  TAI and its principal, cross-defendant and appellant Henry Aguila, asserted various challenges to respondents' title, leading respondents to file a cross-complaint in this action for quiet title and declaratory relief.  Appellants appeal from the trial court's order granting respondents' motion for summary judgment on their cross-complaint.  We affirm.  Respondents' evidence established their position as bona fide purchasers. Appellants failed to point to contradictory evidence creating a triable issue.

## BACKGROUND
### A.    Respondents Acquire the Property
In 2015, TAI borrowed $5.7 million from Pico Rivera First Mortgage Investors, LP ("First Mortgage"), secured by a deed of trust against the Property.  TAI eventually defaulted on the loan and First Mortgage foreclosed on the Property, taking title following a trustee's sale in December 2017.  Respondents purchased the Property from First Mortgage for more than $4 million in November 2019.

**B.     TAI's Complaint and the Oral Option Contract**

In May 2019, TAI filed the underlying action against First Mortgage and others,[1] alleging that First Mortgage and its principal breached an "Option Contract."  According to TAI, pursuant to this agreement, the parties "allowed" the trustee's sale to proceed so that First Mortgage would have title to the Property, and TAI would have "a post[-]foreclosure right of redemption . . . ."  TAI alleged that the Option Contract called for TAI to make reasonable efforts to either locate a buyer for the Property or pay an unspecified "agreed upon payoff sum" "within twelve (12) months from the date of foreclosure."  First Mortgage, TAI alleged, agreed to maintain "viable title to the Property" for 12 months, and upon receipt of payment, would transfer title as directed by TAI.  TAI alleged that it paid $100,000 as "separate consideration" for the Option Contract.

**C.     Respondents' Cross-Complaint and Motion for Summary Judgment**

Respondents answered the first amended complaint and filed a cross-complaint for quiet title and declaratory relief, naming TAI and Aguila as cross-defendants.  Shortly after respondents appeared, TAI voluntarily dismissed them from the first amended complaint.

   1.     *Respondent's Motion for Summary Judgment*

Respondents moved for summary judgment, or in the alternative, summary adjudication on their cross-complaint,

---

[1]     Respondents were added to the operative first amended complaint by Doe amendment, but the pleading set forth no allegations against them.

3

arguing they are bona fide purchasers.  They presented evidence of First Mortgage's acquisition of the Property at the trustee's sale and their subsequent purchase of the Property from First Mortgage.  Respondents' "person most knowledgeable," Joseph Shabani, attested in a declaration that, at the time of the purchase, respondents had no knowledge of the Option Contract or any other adverse interest.

2. *Appellants' Opposition to Summary Judgment*

Appellants countered that respondents were not bona fide purchasers because respondents bought the Property with constructive notice of the Option Contract.  The Option Contract was not memorialized in any recorded document.  Appellants' theory relies on information outside of the chain of title:  a motion to quash a deposition subpoena that First Mortgage filed in a different lawsuit pending in Santa Barbara (the Santa Barbara case).[2]

In that case, First Mortgage sought to block Aguila's effort to depose Shabani.  Among five exhibits attached to the motion to quash was a cross-complaint in which Aguila alleged that First Mortgage had breached the Option Contract.  The motion's proof of service indicates it was served on "Counsel for Deponent Joseph Shabani," H. Joseph Nourmand, on October 24, 2019.

Appellants argued that Nourmand's receipt of the motion to quash, with its mention of the Options Contract in an exhibit, put

---

[2]     *Pico Rivera First Mortgage Investors, LP v. Henry Aguila* (Santa Barbara Superior Court, 18CV04958).  An order from the Santa Barbara court attached to respondents' cross-complaint indicates that First Mortgage sued Aguila in 2018 for breach of a personal guaranty he executed in connection with the loan to TAI.

4

him on notice of the agreement.  This, appellants argued, amounted to constructive knowledge imputed to respondents – through a complex chain of relationships – before respondents recorded their grant deed in November 2019.  Nourmand's knowledge of the Option Contract, appellants argued, was imputed to Shabani, his client.  Shabani, they argued, was either a member or manager of Optimus Properties, Inc. (Optimus), and Optimus, in turn, was either a member or manager of respondent Mercury Bowl.[3]  Appellants argued that Shabani's constructive knowledge of the Option Contract was imputed to Optimus, and Optimus's constructive knowledge was imputed to respondents.

3.  *Respondents' Reply*

In their reply, respondents denied Nourmand's knowledge of the Option Contract.  Nourmand furnished a declaration in which he attested that, when he received the motion to quash, a document nearly 100 pages in length, he was representing Shabani but not as litigation counsel. He said he did not review the lengthy exhibits to the motion, including the cross-complaint describing the Option Contract, because he believed it was unnecessary and because he did not want to bill Shabani for the "many hours" such a review would require.  Shabani was never deposed pursuant to the subpoena.

4.  *Grant of Summary Judgment on the Cross-Complaint*

The trial court granted the motion for summary judgment. The court found it "undisputed that the Option [Contract] concerning TAI's purported interest in the Subject Property was

---

[3]  Appellants did not present evidence of Nourmand's, Shabani's, or Optimus's relationship with Green Rivera.

oral, and not recorded. The existence of any oral Option Agreement is insufficient to confer constructive notice onto Cross-Complainants." It found that respondents established they were bona fide purchasers, and appellants did not satisfy "their corresponding burden to show that a triable issue of material fact exists."

Judgment was entered in favor of respondents on the cross-complaint. Appellants appealed from the judgment.

## DISCUSSION

### A. Governing Law

1. *Bona Fide Purchasers*

A bona fide purchaser for value who acquires its "'interest in real property without knowledge or notice of another's prior rights or interest in the property takes the property free of such unknown interests.' [Citations.]" (*Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 107 (*Vasquez*).) The elements of a bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights. (*Ibid.*) "'Actual notice is defined as "express information of a fact," while constructive notice is that "which is imputed by law."' [Citation.]" (*Ibid.*, quoting Civ. Code, § 18.)

Constructive notice of an option to purchase real property may be given in a recorded instrument. (Civ. Code, § 884.010.) "An unrecorded option is enforceable between the parties but is not enforceable against a bona fide purchaser . . . who does not have knowledge or notice of the option and who buys the property . . . after the option is given and before it is exercised." (4 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 10:117, p. 418, citing *Utley v. Smith* (1955) 134 Cal.App.2d 448, 451.)

6

A party claiming bona fide purchaser status may seek a legal determination through a quiet title action that the title it obtained remains free and clear of any adverse interest in the property.  (Code Civ. Proc., § 760.020, subd. (a); [4] *Vasquez*, *supra*, 52 Cal.App.5th at p. 107.)  "'The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest.' [Citations.]"  (*Ibid*.)

2. *Summary Judgment*

Summary judgment in favor of a plaintiff or cross-complainant is generally appropriate "if all the papers submitted show that there is no triable issue as to any material fact" and that it "is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)

A plaintiff or cross-complainant "moving for summary judgment bears the initial burden of 'showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action.'"  (*640 Octavia, LLC v. Pieper* (2023) 93 Cal.App.5th 1181, 1189 (*640 Octavia*), quoting § 437c, subd. (p)(1).)  A cross-complainant need not disprove defenses asserted by a cross-defendant.  (See *WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 531–532.)  Once the cross-complainant makes an adequate initial showing, the burden shifts to the cross-defendant to show a triable issue of fact "'as to that cause of action or a defense thereto.'"  (*Id*. at p. 532, quoting § 437c, subd. (p)(1).)  "'There is a triable issue of material fact if, and only if,

_____

[4]     Undesignated statutory references in this opinion are to the Code of Civil Procedure.

7

the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*640 Octavia, supra,* 93 Cal.App.5th at p. 1189.)

"We typically review the record de novo to independently determine whether triable issues of material fact exist." (*640 Octavia, supra,* 93 Cal.App.5th at p. 1189.) We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. (*Ibid.*) "The appellant, however, still 'has the burden of showing error, even if he did not bear the burden in the trial court.' [Citation.]" (*Ibid.*)

**B.    Analysis**

In support of their summary judgment motion, respondents offered the trustee's deed by which First Mortgage took title to the Property in 2017; evidence that respondents purchased the Property from First Mortgage and recorded the grant deed in November 2019; and a declaration they had no knowledge of the Option Contract when they purchased the Property. Appellants do not challenge the sufficiency of this initial showing nor do they dispute that the burden shifted to them to show a triable issue of fact. (§ 437c, subd. (p)(1).)

Appellants argue that they raised a triable issue as to respondents' constructive knowledge of the Option Contract before acquiring title to the Property. As they did below, appellants argue that: (1) attorney Nourmand had constructive knowledge of the Option Contract because he received the motion to quash; (2) his constructive knowledge was imputed to his client, Shabani; (3) Shabani's constructive knowledge was

8

imputed to Optimus; and (4) Optimus's constructive knowledge was imputed to respondents. We disagree with the first and second propositions and need not reach the others.

Appellants presented no evidence that Nourmand read the Santa Barbara cross-complaint's allegations describing the Option Contract, and Nourmand affirmatively stated that he did not.[5] Thus, the only evidence in the record indicates that he did not know of the existence of the Option Contract before respondents acquired the Property.

Appellants argue it was "not objectively reasonable" for Nourmand not to read the cross-complaint because the motion to quash was a "legal document served upon him . . . as counsel for a client who is the sole subject of the motion . . . ." The only case they cite to support this argument, *Castillo v. Toll Bros., Inc.* (2011) 197 Cal.App.4th 1172, 1197, is of little assistance because the case did not discuss an attorney's obligation to read

---

[5] Appellants argue that the trial court erred to the extent it considered this declaration because it was filed with respondents' reply. We disagree. When this motion was heard in 2024, courts had discretion to consider such evidence so long as the opposing party had notice and an opportunity to respond. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 449 [party opposing summary judgment forfeited claim of a due process violation by failing to object to evidence filed with reply and failing to seek leave to submit responsive evidence or a sur-reply]; *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 499) ["[e]vidence which is used to fill gaps in the original evidence created by the opposition is particularly appropriate to consider in a reply"].) Nourmand fairly responded to appellants' argument that he should be charged with knowledge of matters disclosed in the motion to quash. Appellants had more than a year after receiving the declaration to object or seek leave to respond to it. They did neither, and thus, forfeited any challenge to the declaration.

9

documents or the circumstances under which unread facts may be imputed to a client.

A client is deemed to have knowledge of information that his attorney acquired within the scope of his representation and ought to have communicated to his client in the exercise of ordinary care and diligence.  (See Civ. Code § 2332; see *Freeman v. Superior Court* (1955) 44 Cal.2d 533, 538.)  Furthermore, a client "will ordinarily be charged with constructive notice only where the knowledge of the attorney has been gained in the course of the particular transaction in which he has been employed by that principal."  (*Otis v. Zeiss* (1917) 175 Cal. 192, 195–196; see *Freeman, supra*, 44 Cal.2d at p. 538 [client charged with knowledge of an order where he was represented at the court hearing by counsel, who was thereafter served with a copy of the order]; *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1231 [clients charged with knowledge of wild deeds discovered by the attorney they retained to perform a title search and file a quiet title action]; *Zirbes v. Stratton* (1986) 187 Cal.App.3d 1407, 1414 [client not charged with knowledge that an answer had been filed on her behalf in a breach of lease lawsuit where that information was given to her divorce lawyer].)

In this case, appellants presented no evidence about the nature and scope of Nourmand's representation of Shabani, thereby precluding a determination that ordinary care and diligence required Nourmand to read every exhibit attached to the motion to quash and communicate what he learned to his client.  Nothing in the record suggests that Nourmand was advising Shabani about the purchase and sale of the Property or otherwise had an affirmative duty to find clouds on title.  Nor was there evidence indicating that the nature of Nourmand's

10

representation required him to scrutinize motions and pleadings generated in litigation where Shabani was not named as a party. Nourmand declared he was not Shabani's litigation counsel. Without more information, we cannot say it was unreasonable for Nourmand to forego reading a nearly 100-page set of motion papers to minimize his client's legal fees.

The evidence was insufficient to raise a triable issue as to Nourmand's and Shabani's constructive knowledge of the Option Contract. Our conclusion on this point prevents appellants from establishing that Shabani's knowledge was imputed to Optimus, and Optimus' knowledge was imputed to respondents. Accordingly, we conclude that appellants did not carry their burden of demonstrating a triable issue of material fact as to respondents' status as bona fide purchasers. The trial court did not err in granting summary judgment in favor of respondents on their cross-complaint.[6]

---

[6]     Because we conclude that respondents did not purchase the Property with constructive notice of the Option Contract, we need not address respondents' arguments regarding the agreement's enforceability or whether it affected title to the Property.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


\*\*VAN ROOYEN, J.

We concur:


COLLINS, Acting P. J.


TAMZARIAN, J.

---

\*\*      Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.